IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 16-008420-CA-01

RICARDO LUPERON-GARCIA,

      Plaintiff,

v.

MEXICAN GASTRONOMY INT.,
LLC and ALBERTO CINTA,

      Defendants.

_____/

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS, AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), Defendants, Mexican Gastronomy Int., LLC ("Cantina") and Alberto Cinta ("Cinta") (Cantina and Cinta are hereinafter collectively referred to as "Defendants"),[1] file this Motion to Compel Arbitration and Dismiss Proceedings, and Incorporated Memorandum of Law ("Motion"), and state as follows.

## PRELIMINARY STATEMENT

Plaintiff Ricardo Luperon-Garcia ("Plaintiff") was first hired by Cantina in January 2015 and worked for the company until January 2016. On or about October 2, 2015, Cantina implemented its mandatory arbitration program and agreement with respect to its employees. During the initial implementation meeting, Plaintiff (i) received a copy of Mexican Gastronomy International LLC's Arbitration Program & Agreement ("Arbitration Agreement"); (ii) received a copy of a "Frequently Asked Questions About Arbitration" informational sheet; and (iii) was

_____

[1] For purposes of this Motion, use of the term "Defendants" should not be construed as an admission of liability of status as an "employer" under the FLSA or any other applicable law, both of which are expressly denied.

presented a video (in both English and Spanish) that discussed the terms of the Arbitration Agreement.  After Plaintiff received and was explained the terms of the Arbitration Agreement (including an explanation of the exclusive method of acceptance and/or rejection of the Arbitration Agreement) Plaintiff accepted the Arbitration Agreement and agreed to abide by its terms by continuing to work at the company.  Indeed, Plaintiff worked at Cantina for several months following implementation of the Arbitration Agreement. *See* MEXICAN GASTRONOMY INTERNATIONAL LLC'S ARBITRATION PROGRAM & AGREEMENT, ¶8, attached hereto as Exhibit "A."

The claims in Plaintiff's Complaint fall squarely within the ambit of the claims governed by the Arbitration Agreement. *See* Plaintiff's Complaint, ¶1 [D.E. 1].  Coupled with overwhelming United States Supreme Court precedent confirming the longstanding policy favoring arbitration, Defendants ask this Court to enforce the parties' Arbitration Agreement and "direct that such arbitration proceed in the manner provided for in [the] agreement." FAA, 9 U.S.C. §4.

**STANDARD OF REVIEW ON A MOTION TO COMPEL ARBITRATION**

Section 4 of the FAA provides that federal courts must compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. In evaluating whether to compel arbitration, the Supreme Court "states explicitly that once a court is satisfied with the 'formation of the parties' arbitration agreement' and 'the applicability of the specific arbitration clause that a party seeks to have the court enforce,' reference to an arbitrator to resolve any outstanding issues is appropriate." *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 993 (11th Cir. 2012) (citing *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S. Ct. 2847, 2860 n.9 (2010)) (internal citations omitted).

As "[m]otions to compel arbitration generally raise factual attacks . . . the Court [is permitted to] consider evidence outside the four corners of the complaint[,]" such as testimony,

documents and affidavits. *Jackson v. Home Team Pest Def., Inc.*, 2013 U.S. Dist. LEXIS 163269 (M.D. Fla. Sept. 18, 2013). In analyzing motions to compel arbitration, courts typically apply a summary judgment standard. *Magnolia Capital Advisors Inc. v. Bear Stearns & Co.*, 272 Fed. App'x 782, 785 (11th Cir. 2008) (unpublished). "[W]hen there is no genuine issue of fact concerning the formation of the agreement . . . the court [should] decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* at 785-86 (internal quotations and citations omitted). An unequivocal denial that the agreement was made, together with enough evidence to make the denial colorable, **is required** to create a genuine issue of fact. *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992).

In analyzing the parties' contentions, the Court is not required to accept all of Plaintiff's allegations as true. Rather, the Court should only "give the party denying the agreement to arbitrate the benefit of all reasonable doubts and inferences." *Jackson*, 2013 U.S. Dist. LEXIS 163269 at *8. Here, each prong weighs in favor of enforcing the parties' Arbitration Agreement and compelling arbitration. Accordingly, and in light of the strong public policy favoring arbitration and the federal statute deeming such agreements presumptively valid, Plaintiff should be compelled to arbitrate his claims.

## ARGUMENT

### I. THERE IS A STRONG FEDERAL PRESUMPTION FAVORING THE ENFORCEMENT OF AGREEMENT TO ARBITRATE.

It is "beyond dispute that the FAA was designed to promote arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). The Supreme Court of the United States has interpreted the FAA to "manifest a liberal federal policy favoring arbitration agreements," *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002), and has mandated that "any doubts concerning the scope of arbitrable issues [ ] be resolved **in favor of arbitration** whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay

or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983) (emphasis added).

Under Section 4 the FAA, district courts must compel arbitration of all claims subject to arbitration upon motion of a party. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218-19 (1985). The FAA was designed to provide parties with a faster and less complicated alternative to resolving disputes. The goal of the FAA was to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 111 S. Ct. 1647, 1651 (U.S. 1991).

The Supreme Court of the United States has repeatedly and unequivocally confirmed that there is a "liberal federal policy favoring arbitration agreements[,]" *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and has confirmed that the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, §3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, §4." *Gilmer*, 111 S. Ct. at 1651. Indeed, the FAA "requires courts to enforce agreements to arbitrate according to their terms . . . even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id.* (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), quoting *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226 (1987)). This federal policy "requires [courts] to construe arbitration clauses generously, resolving all doubts in favor of arbitration." *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 386 (11th Cir. 1996) (citing *Seaboard Coast Line R.R. v. Trailer Train Co.,* 690 F.2d 1343 (11th Cir.1982)).

The FAA, and a well-developed body of case law analyzing the FAA, both strongly favor the enforcement of agreements to arbitrate and provide that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, **save upon such grounds as exist at law or in equity for the revocation of any contract.**" 9 U.S.C. § 2 (emphasis added). It also directs that:

> [a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration **may petition any United States district court...for an order directing that such arbitration proceed**....[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration.

9 U.S.C. §4.

Moreover, a litigant may not refuse to arbitrate a dispute within the scope of a valid agreement to arbitrate.  In such circumstances, a judicial order compelling arbitration is mandatory: "**[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that the district court _shall_ direct the parties to proceed to arbitration** on issues as to which an arbitration agreement has been signed.'" *Dean Witter*, 470 U.S. at 218 (emphasis added).  In such instances, the "**party resisting arbitration bears the burden** of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)(emphasis added).

As explained in greater detail below, Defendants appropriately entered into an agreement to arbitrate specific claims with the Plaintiff.  Accordingly, this Court should enforce the Arbitration Agreement and compel Plaintiff to arbitrate his claims.

## II. The Arbitration Agreement is Fully Enforceable Under the FAA.

### 1. *Plaintiff and Defendants Agreed to Arbitrate the Claims Asserted in this Action.*

In determining whether to compel arbitration of a dispute, the Court must first decide whether the parties have agreed to arbitrate that particular dispute. *See John B. Goodman Ltd. Partn. v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) (reversing and remanding with instructions that the district court grant defendant's motion to compel arbitration). Under the FAA, "a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute." 9 U.S.C. §3.

"[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts." *Caley*, 428 F.3d at 1368. Courts generally apply "ordinary state-law principles that governing contract formation[,]" when determining whether the parties actually agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 939 (1995).

Florida law governs the parties' Arbitration Agreement. *See* Exhibit "A," at ¶7(c). "Under Florida law, the formation of an enforceable contract requires, 'an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained.'" *Corbin v. Affiliated Computer Servs.*, 2013 U.S. Dist. LEXIS 102132, *10 (M.D. Fla. July 19, 2013) (quoting *West Const., Inc. v. Fla. Backtop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012)). Whether "an express contract has been formed 'depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs — not on the parties having meant the same thing but on their having said the same thing.'" *Id.* at*10 (quoting *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 407 (Fla. 1974)).

Moreover, "the terms of the contract should control where the rights and interests of the parties are definitely and clearly stated." *American Express Financial Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (holding that injunctive relief was expressly excluded from the scope of the arbitration agreement and was therefore intended by the parties) (citing *Atlanta & St. A.B. Ry. Co. v. Thomas*, 60 Fla. 412, 421 (1910). Accordingly, "[t]he agreement of the parties determines the issues subject to arbitration." *Regency Group, Inc. v. McDaniels*, 647 So.2d 192, 193 (Fla. 1st DCA 1994).

A. **Defendants and Plaintiff formed a valid contract.**

   i. Plaintiff was unequivocally offered the terms of the Arbitration Agreement prior to accepting it.

Defendants offered the Arbitration Agreement to Plaintiff on or about October 2, 2015, when it implemented its Arbitration Agreement. First, an independent human resources consultant provided every then-current employee with the following explanatory materials:

a.   Arbitration Program & Agreement ("Arbitration Agreement");

b.   Frequently Asked Questions Sheet about the Arbitration Agreement ("FAQ Sheet"); and

c.   Video (in both English and Spanish) explaining the terms of the Arbitration Agreement and the manner in which an employee may accept or reject the Arbitration Agreement ("Video").[2]

*See* Exhibits "A" & "B." Plaintiff received and signed his packet acknowledgement form, thereby confirming receipt of these materials. *See* PLAINTIFF'S SIGNED PACKET ACKNOWLEDGEMENT FORM, Exhibit "C."

Thereafter, the independent human resources consultant held an employee meeting where the material terms of the Arbitration Agreement were explained to Plaintiff and other employees. At the conclusion of this meeting, all employees (including Plaintiff) were once again reminded that

---

[2] Defendants will make the Video available to the Court upon its request.

the only method of accepting (or rejecting) the Arbitration Agreement was by the employee's continued (or discontinued) employment with Cantina.  Employees were all encouraged to email Cantina's independent human resources consultant (at the email address provided in the FAQ Sheet) if they had any questions that had not otherwise been answered during the meeting and their review of the Arbitration Agreement, the FAQ Sheet, and the Video presentation.

    This constitutes an "offer" under Florida law.  "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Caley*, 428 F.3d at 1373 (citing the *Restatement (Second) of Contracts*, § 24).  Here, Cantina's Arbitration Agreement clearly states that it is "an agreement which, among other things, requires [the] employee to arbitrate all claims which [the employee] may have."  Exhibit "A," ¶8.  The Arbitration Agreement establishes the terms of the contract, including the claims that are covered under the agreement, the arbitration process, and 'other issues' relating to the agreement. *See* Exhibit "A," ¶¶ 1, 2, 6 & 7.  The Arbitration Agreement also details and explains the exclusive means of accepting the Agreement, even providing examples of the same. Exhibit "A," ¶8.  Accordingly, the Arbitration Agreement was sufficiently offered to Plaintiff in clear terms, as evidenced by the Agreement itself and the Agreement's accompanying materials.

                    ii. Plaintiff accepted the Arbitration Agreement by continuing his employment with Cantina.

    Like many contracts, the Arbitration Agreement contains a specific manner in which it may be accepted.  Importantly, the FAA only requires an arbitration agreement to be written, not signed, and acceptance can be achieved by mutual consideration.  *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (holding that the FAA's written agreement requirement does not require "that the agreement to arbitrate be signed by either party").  Here,

the Arbitration Agreement explicitly states that "**THE EXCLUSIVE METHOD FOR ACCEPTING THIS AGREEMENT IS BY YOUR CONTINUED EMPLOYMENT AFTER YOUR RECEIPT[.]**" Exhibit "A," at ¶9 (emphasis in the original).  This method of acceptance is also highlighted in the FAQ Sheet, Exhibit "B," and was communicated to Plaintiff via the Video.

At the conclusion of the independent human resources consultant's presentation, Plaintiff agreed to be bound by the Arbitration Agreement by voluntarily continuing his employment with the restaurant.  Indeed, Plaintiff continued to work at Cantina for several more months following the date the Arbitration Agreement was implemented as a mandatory requirement for employment at the restaurant. *See Vince v. Specialized Servs.*, 2011 U.S. Dist. LEXIS 113779 (M.D. Fla. Oct. 3, 2011) (holding that "Plaintiff's signature of the Acknowledgment, and the fact that she worked for Defendants after signing it, signifies her acceptance of the arbitration [agreement]").

In similar circumstances, federal courts have repeatedly held that **continued employment after receipt of a mandatory arbitration agreement constitutes acceptance of the agreement**. For example, in *Corbin* an employer **<u>emailed</u>** a mandatory arbitration agreement to its employees which, by its terms, would be accepted and applied to any employees still employed with the company after a specific date. *See Corbin*, 2013 U.S. Dist. LEXIS 102132 at *11-14.  Specifically, the company in *Corbin* instituted a "Dispute Resolution Program," including a "Mandatory Arbitration Plan," which stated that "**[a]cceptance of the DRP . . . is a condition to your continued employment . . . [and] . . . by continuing your employment with XBS . . . you are accepting and consenting to be bound" by the agreement**. *Corbin*, 2013 WL 3804862, at *1 (emphasis added).  The court in *Corbin* determined that the plaintiff-employee's "continued

employment at [the company] [was] an acceptance and sufficient consideration to satisfy the requirements of an express contract" under Florida law. *Id.* at *16-17.

The facts here go a step further. Plaintiff was not "emailed" the Arbitration Agreement. Instead, he was offered the Arbitration Agreement during a designated employee meeting. The Arbitration Agreement was explained in great detail on the date that it was implemented. Indeed, Cantina went beyond what was required of it and: (i) handed Plaintiff a printed copy of the Arbitration Agreement in person; (ii) took the time to show Plaintiff (along with other employees) an explanatory video regarding the Arbitration Agreement (in both English and Spanish); (iii) provided Plaintiff with FAQ Sheet that provided information about the Arbitration Agreement; and (iv) provided Plaintiff with a manner in which to contact Cantina's independent human resources consultants if he had any further questions. Thereafter, Plaintiff voluntarily accepted the Arbitration Agreement by returning to work and continuing to work for several months after implementation of the Arbitration Agreement. Accordingly, Plaintiff's acceptance of the Arbitration Agreement was valid.

      iii.  <u>The parties' mutual obligation to arbitrate, and Plaintiff's continued employment at Cantina, are both independently sufficient consideration for the Arbitration Agreement.</u>

Under Florida law, "[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1312 (S.D. Fla. 2009). In the context of arbitration, "[m]utually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration agreement." *Bhim*, 655 F. Supp. 2d at 1312; *see also Vince v. Specialized Servs.*, 2011 U.S. Dist. LEXIS 113779 (M.D. Fla. Oct. 3, 2011) (holding that an arbitration provision that required disputes between employees and the company to be submitted to arbitration was "sufficient consideration to support [the] contract").

Here, the Arbitration Agreement requires both Defendants and Plaintiff to arbitrate the claims covered by the Agreement. *See* Exhibit "A," at ¶1. Indeed, the Arbitration Agreement explicitly states that consideration for the Agreement includes the "mutual agreement to arbitrate." Exhibit "A," at ¶5. This mutual agreement to arbitrate, where Cantina did not have a pre-existing obligation to do so, is sufficient to satisfy the element of consideration.

Continued employment provides additional consideration for an arbitration agreement in the employment context. *See Corbin*, 2013 U.S. Dist. LEXIS 102132 at *1 (holding that continued employment was sufficient consideration to create a contract); *see also Bhim*, 655 F. Supp. 2d at 1313 (S.D. Fla. 2009) (holding that, although "the mutual promises to arbitrate would be sufficient to render the Arbitration Agreement enforceable[,]" the employee "received additional consideration . . . in the form of her continued employment at Rent–A–Center."). Similar to both *Corbin* and *Bhim*, the Arbitration Agreement here expressly provides that employees' "**continued employment . . . subsequent to this Agreement's implementation also shall constitute consideration and acceptance by you of the terms and conditions set forth in this Agreement.**" Exhibit "A," at ¶5 (emphasis in original).

Cantina has also provided additional consideration by agreeing to pay for the arbitration firm's and the arbitrator's fees. Exhibit "A," at ¶5.

Accordingly, the Court should therefore compel Plaintiff to arbitrate his claims.

iv. The Arbitration Agreement is sufficiently specific.

The Arbitration Agreement is clear in terms of the method of acceptance, the covered claims, and the arbitral process. Exhibit "A," at ¶¶ 1, 2, 6, & 8. The Arbitration Agreement also makes it specifically clear that it is "a legal document which, among other things, requires [the employee] to arbitrate all claims [the employee] may have now or in the future with the company,

which otherwise could have been brought in court." Exhibit "A," at ¶8.  As such, this element is satisfied.

The exclusive method of accepting the Arbitration Agreement is clearly stated in the Agreement itself:

> **YOU ACKNOWLEDGE AND ADMIT THAT THE EXCLUSIVE METHOD FOR ACCEPTING THIS AGREEMENT IS BY YOUR CONTINUED EMPLOYMENT AFTER YOUR RECEIPT OF SAME[.]**

Exhibit "A," at ¶8. Plaintiff was also provided with a Frequently Asked Questions and Video Presentation (in both English and Spanish) explaining the Arbitration Agreement.  Accordingly, the terms of the Arbitration Agreement, including the method of acceptance, were clear and unambiguous and the Court should therefore compel Plaintiff to arbitrate his claims.

**B. The claims asserted in this action are unambiguously covered by the scope of the Arbitration Agreement.**

The scope of an arbitration agreement is a matter of contract interpretation, and is determined by the language used in the contract. *Multi-Financial Sec., Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004). To determine whether an arbitration agreement governs a dispute, the court must interpret the agreement as it would any agreement under applicable state law, giving effect to the parties' intent as expressed by the ordinary meaning of the language they used. *Id.* Moreover, in the context of arbitration agreements, the FAA requires a court to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *Id.*

Under the terms of the Arbitration Agreement, the employee is required to arbitrate:

> [A]ny and all disputes, claims, or controversies against [the Company][3] that could be brought in court, including, but not limited to, all claims arising out of [the employees] employment and the cessation of employment, including any claim

---

[3] The Arbitration Agreement defines the Company as: "Mexican Gastronomy International, LLC (d/b/a Cantina La Veinte), its parent corporation (if any), affiliates, subsidiaries, divisions, successors, assigns and the current and former owners, officers, directors, and agents[.]"

> that could have been presented to or could have been brought before any court . .
> . includ[ing], but not limited to, claims under . . . **the Fair Labor Standards Act.**

Exhibit "A," ¶1 (emphasis added). The claim in Plaintiff's complaint is made pursuant to the

FLSA. *See* Plaintiff's Complaint, ¶1 [D.E. 1]. Additionally, the Arbitration Agreement requires

the arbitrator, as opposed to this Court, to "resolve any dispute relating to the interpretation,

applicability, enforceability or formation of this Agreement, including, but not limited to, any

claim that all or any part of this Agreement is void or voidable[,]" should any such dispute arise.

Exhibit "A," at ¶4.

Accordingly, Plaintiff's FLSA claim is covered under the scope of the Arbitration

Agreement and must therefore be arbitrated by the parties. Any dispute with regard to the

threshold issue of arbitrability of the claim must also be handled in arbitration, and the Court

should therefore compel Plaintiff to arbitrate his claims.

### 2. *Arbitration is an appropriate forum for Plaintiff's FLSA claim.*

Section 2 of the FAA requires courts to enforce arbitration agreements according to their

terms. *Dean Witter*, 470 U.S. at 221; *Walthour v. Chipio Windshield Repair, LLC*, No. 1311309,

2014 U.S. App. LEXIS 5315, *8 (11th Cir. 2014). The exception to this rule is where "contrary

congressional command" from another statute overrides the FAA's mandate. *CompuCredit*, 132

S. Ct. at 669 (quoting *Shearson/Am. Express*, 482 U.S. at 226).

In line with the Supreme Court's pronouncements in *Circuit City*, the 11th Circuit in

*Walthour*, directly addressed the question of "whether an arbitration agreement, which waives an

employee's ability to bring a collective action under the Fair Labor Standards Act, is enforceable

under the Federal Arbitration Act." 2014 U.S. App. LEXIS 5315 at **2-3. The court found that

the FLSA and the FAA are not at odds:

> After examining the FLSA's text, legislative history, purposes, and
> these Supreme Court decisions, we discern no "contrary

congressional command" that precludes the enforcement of plaintiffs' Arbitration Agreements and their collective action waivers.

*Id.* at *21. Specifically, the *Walthour* court held that the "FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action under § 16(b)." *Id.*; *see also Jackson v. Home Team Pest Def., Inc.*, 2013 U.S. Dist. LEXIS 163269, 18-19 (M.D. Fla. Sept. 18, 2013) (recognizing that "[t] he First, Second, Fourth, Fifth, Sixth, Eighth, and Ninth Circuits have all concluded that **FLSA claims are not immune from mandatory arbitration.**")(emphasis added).

In the instant action, the Arbitration Agreement does not infringe upon Plaintiff's ability to vindicate his rights. As in *Walthour,* Plaintiff here cannot identify conflict between the FLSA and FAA because none exists. This truth is evidenced in the 11th Circuit by that court's repeated approval of arbitration of FLSA claims and other claims brought pursuant to Section 216(b)'s collective action mechanism. Moreover, "federal policy favors arbitration and there is no indication that arbitration, even in the face of a collective action waiver, interferes with the collective action policies of the FLSA." *Stanfield v. Fly Low, Inc.*, 15-20224-CIV, 2015 WL 4647902, at *3 (S.D. Fla. Aug. 5, 2015) (granting defendant's motion to compel arbitration).

### 3. *Mandatory arbitration in the employment context is entirely permissible.*

The FAA and the federal policy favoring arbitration applies with equal force to arbitration agreements in the employment context. *Circuit City*, 532 U.S. at 123 ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context."); *Caley*, 428 F.3d at 1367; *Weeks*, 291 F.3d at 1313-14. Though employees have routinely challenged arbitration agreements based on the supposed power disparity between employers and employees, these arguments have been thoroughly rejected. *Gilmer*, 500 U.S. at 32-33 (enforcing an employment arbitration agreement and noting, "[m]ere

inequality in bargaining power...is not a sufficient reason to hold that arbitration agreements [are unenforceable].").

Moreover, courts have confirmed that <u>mandatory</u> arbitration as a condition of hire and/or continued employment is appropriate. In *Caley*, the Eleventh Circuit confirmed:

> Indeed, compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes...

428 F.3d at 1367 (citing *Weeks*, 291 F.3d at 1313-14); *Perhach v. Option One Mortgage Corp.*, 382 F. App'x. 897, 899-900 (11th Cir. 2010) (arbitration agreement upheld despite employee's contention that he may have been fired had he not signed the agreement).

As such, there is no validity to any potential argument that the Arbitration Agreement inappropriately lacks a meaningful opportunity to opt-out. Any such argument would contravene long-standing legal precedent that deems mandatory arbitration agreements entirely permissible, especially in the workplace.

### 4. *Arbitration agreements containing class action waivers are proper.*

As a matter of law, a class / collective action waiver in an arbitration agreement is valid and enforceable. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773-74 (2010).

In *Stolt-Nielsen*, the Supreme Court confirmed that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion" and "whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the parties' contractual rights and expectations." *Id.* (internal quotations and citations omitted). The Court added that "[u]nderscoring the consensual nature of private dispute resolution, we have held that parties are generally free to structure their arbitration agreements as they see fit[,]" including the ability to "specify *with whom* they choose

to arbitrate their disputes." *Id.* at 1774 (emphasis in original) (internal quotations and citations omitted). Thus, "it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1775 (emphasis in original); *see also Caley*, 428 F.3d at 1378 ("As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition, characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims."); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (11th Cir. 2001).

The Supreme Court addressed the issue of class waivers in arbitration agreements in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748-49 (2011), explaining: (i) the FAA's "principal purpose" is to ensure the enforcement of private arbitration agreements according to their terms; (ii) the Supreme Court previously had held the parties may agree to limit, *inter alia*, the issues to be arbitrated, the rules under which arbitration would proceed, and with whom they choose to arbitrate; and (iii) the reason for allowing parties such discretion is to permit efficient, streamlined procedures.. Following *AT&T*, the Eleventh Circuit reasoned, "the overarching purpose of the FAA is to ensure the enforcement of arbitration agreements according to their terms so as to streamline proceedings," and as such, "conditioning the enforceability of arbitration agreements on the availability of classwide arbitration procedures is inconsistent with the FAA." *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1212-13 (11th Cir. 2011).

In *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2307 (2013), the Supreme Court addressed "whether a contractual waiver of class arbitration is enforceable under the [FAA] when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery."  In finding such a waiver enforceable, the Court held that the necessity that a party be

16

able to effectively vindicate his rights comes from "the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies . . .' [b]ut the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the right to pursue that remedy." *Id.* at 2310-11 (emphasis in original). *Am. Express* reaffirms the propriety of class action waivers in arbitration agreements and the strong federal policy favoring arbitration.

The Eleventh Circuit recently concluded that, after reviewing the purposes of the FLSA, "the enforcement of collective action waivers in arbitration agreements is also not inconsistent with the FLSA. . . . [d]ue to the absence of a contrary congressional command in the FLSA, we conclude plaintiffs' Arbitration Agreements are enforceable under the FAA, including their collective action waivers." *Walthour,* 2014 U.S. App. LEXIS 5315 at *25. In support, the court followed other circuits' precedent and found that Section 216(b) of the FLSA "does not provide for a non-waivable, substantive right to bring a collective action." *Id.* at *26; *see Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296-97 & n.6 (2d Cir. 2013); *Owen,* 702 F.3d at 1052-53; *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002).

## III. ELEVENTH CIRCUIT AND SUPREME COURT PRECEDENT CONFIRM THAT AGREEMENTS TO ARBITRATE IN THE EMPLOYMENT CONTEXT ARE NOT COERCIVE OR RETALIATORY.

In much the same way that the Supreme Court and the Eleventh Circuit have confirmed that mandatory arbitration agreements are appropriate in the employment context, those courts have also confirmed that arbitration is neither coercive nor retaliatory in the at-will employment context. *Volt*, 489 U.S. at 479 ("[a]rbitration is a matter of consent, not coercion");  *see also Perhach*, 382 F. App'x. at 899 ("[a]rbitration agreements are not coercive **simply because an employer requires them as a condition of employment**") (emphasis added);  *Weeks*, 291 F.3d

at 1316 (confirming that plaintiffs whose employment was terminated after their refusal to execute an arbitration agreement were not retaliated against).

In *Weeks*, the 11th Circuit considered the issue of terminations based on employees' refusal to execute mandatory arbitration provisions. 291 F.3d at 1311. The court concluded that even if the agreement at issue was "unenforceable or even illegal," the employer who required employees to sign it as a condition of employment **would not** be guilty of violating federal anti-retaliation statutes. *Id.* at 1316. In evaluating claims of retaliation, the *Weeks* court concluded that "the plaintiffs could not have had a reasonable belief that the refusal to sign [an unenforceable arbitration agreement] constituted protected action." *Id.* at 1317. Based on precedential case law, to the extent Plaintiff contends that Defendants' conduct was implicitly coercive or retaliatory, this contention is immaterial. Arbitration as a legal concept is not coercive, or retaliatory and the Court should therefore compel Plaintiff to arbitrate his claims.

## **CONCLUSION**

Defendants, Mexican Gastronomy International, LLC and Alberto Cinta, respectfully requests this Court to dismiss this action and compel Plaintiff to arbitrate his claims, in accordance with the parties' valid Arbitration Agreement and pursuant to overwhelming statutory and federal and state Supreme Court precedent holding such arbitration agreements valid.

Dated <u>November 2, 2016</u>.

           Respectfully submitted,

           <u>*/s/ Devand A. Sukhdeo*</u>
           Devand A. Sukhdeo, Esq. (Fla. Bar No. 126977)
           E-mail: <u>*dsukhdeo@constangy.com*</u>
           Jennifer M. Moore, Esq. (Fla. Bar No. 092011)
           E-mail: <u>*jmoore@constangy.com*</u>
           Fabian A. Ruiz, Esq. (Fla. Bar No. 117928)
           E-mail: <u>*fruiz@constangy.com*</u>
           Constangy, Brooks, Smith & Prophete, LLP
           1801 N.E. 123rd Street, Suite 314
           North Miami, FL 33181
           Telephone: (786) 629-6055
           Facsimile: (786) 629-6070
           *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2016 I caused to be served, a true and correct copy of the foregoing document using the Florida e-Filing Portal Electronic Docketing System, which will send a Notice of Electronic Filing to the following:

| | |
|---|---|
| Anthony M. Georges-Pierre, Esq.<br>E-mail: *agp@rpganttorneys.com*<br>Anaeli C. Petisco, Esq.<br>E-mail: *apetisco@rpgattorneys.com*<br>Rainier Regueiro, Esq.<br>E-mail: *rregueiro@rpganttorneys.com*<br>Remer & Georges-Pierre, PLLC<br>44 West Flagler Street, Suite 2200<br>Miami, FL 33130<br>Telephone: (305) 416-5000<br>Facsimile: (305) 416-5005<br>*Counsel for Plaintiff* | Devand A. Sukhdeo, Esq.<br>E-mail: *dsukhdeo@constangy.com*<br>Jennifer M. Moore, Esq.<br>E-mail: *jmoore@constangy.com*<br>Fabian A. Ruiz, Esq.<br>E-mail: *fruiz@constangy.com*<br>Constangy, Brooks, Smith & Prophete, LLP<br>1801 N.E. 123rd Street, Suite 314<br>North Miami, FL 33181<br>Telephone: (786) 629-6055<br>Facsimile: (786) 629-6070<br>*Counsel for Defendants* |

Respectfully submitted,

**CONSTANGY, BROOKS, SMITH, & PROPHETE, LLP,**

 */s/ Devand A. Sukhdeo*
Devand A. Sukhdeo, Esq.

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 16-008420-CA-01

RICARDO LUPERON-GARCIA,

      Plaintiff,

v.

MEXICAN GASTRONOMY INT.,
LLC and ALBERTO CINTA,

      Defendants.

_____/

### ORDER GRANTING DEFENDANTS' <br> <u>MOTION TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS</u>

THIS CAUSE having come before the Court on Defendants Mexican Gastronomy International, LLC and Alberto Cinta's ("Defendants") Motion to Compel Arbitration and Dismiss Proceedings, and the Court fully advised in the premises, it is hereby:

**ORDERED AND ADJUDGED** that Defendants' Motion to Compel Arbitration and Dismiss Proceedings is GRANTED.  This action is hereby dismissed, with prejudice.  The parties are ordered to submit the claims presented in the instant action to arbitration.

      DONE AND ORDERED at Miami-Dade County, this _____ day of _____, 2016.


_____
CIRCUIT COURT JUDGE
THOMAS J. REBULL

Copies furnished to:
Counsel of Record

Exhibit "A"

# MEXICAN GASTRONOMY INTERNATIONAL, LLC's
# ARBITRATION PROGRAM & AGREEMENT

Mexican Gastronomy International, LLC (d/b/a Cantina La Veinte), its parent corporation (if any), affiliates, subsidiaries, divisions, successors, assigns and the current and former owners, officers, directors, and agents (collectively referred to as the "Company") seeks to work with its employees to resolve differences as soon as possible after they arise. Often times, differences can be eliminated through internal discussions between an employee and his/her supervisor. Other times, it may be helpful for Human Resources or other Company employees to become involved to help resolve a dispute. To facilitate dispute resolution, the Company has developed this binding arbitration agreement ("Agreement") to resolve disputes that are not disposed of through more informal means.

As a condition of hire and/or continued employment, each employee of Company, including the employee's heirs, executors, administrators, successors, and assigns (collectively referred to as "you" or "your") (you and the "Company" may be collectively referred to as the "Parties") agrees to enter into this Agreement and be bound by its terms.

In consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you and the Company agree as follows:

1. **The Mutual Agreement to Arbitrate: Overview**

   Except for the claims set forth in the paragraph below, you are required to arbitrate any and all disputes, claims, or controversies ("claim") against the Company that could be brought in a court including, but not limited to, all claims arising out of your employment and the cessation of employment, including any claim that could have been presented to or could have been brought before any court. This Agreement to arbitrate includes, but is not limited to, claims under the Age Discrimination in Employment Act; the Older Worker's Benefit Protection Act; Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; the Family and Medical Leave Act; the Americans with Disabilities Act of 1990; Section 1981 through 1988 of Title 42 of the United States Code; the Equal Pay Act; the Uniformed Services Employment and Reemployment Rights Act; the Workers Adjustment and Retraining and Notice Act and any state or local anti-discrimination laws; or any other federal, state, or local law, ordinance or regulation based on any public policy, contract, tort, or common law or any claim for costs, fees, or other expenses or relief, including attorney's fees. Accordingly, all claims which could be pursued in court instead must be pursued in arbitration, and the arbitrator shall apply the law accordingly.

   Likewise, the Company has a reciprocal obligation to arbitrate any covered claim against you and also agrees to be bound by the terms of this Agreement regarding any matter covered herein.

2. **Claims Not Covered by This Agreement**

   Claims not covered by this Agreement are: (i) claims for workers' compensation benefits **[However, this does not include claims for workers' compensation retaliation]**; (ii) claims for unemployment compensation benefits; (iii) claims based upon the Company's current (successor or future) stock option plans, employee pension and/or welfare benefit

1

plans if those plans contain some form of a grievance or other express procedure for the resolution of disputes under the plan; (iv) claims filed with a federal, state, or local administrative agency (e.g., the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), etc.); (v) claims covered by a written employment contract signed by both parties which expressly provides for resolution of disputes in accordance with that contract's terms; (vi) claims by law which are not subject to mandatory binding pre-dispute arbitration pursuant to the Federal Arbitration Act, such as claims under the Dodd-Frank Wall Street Reform Act; (vii) claims that are not causes of action in court, e.g., disputes over performance reviews, disciplinary actions, compensation and other employment actions which when standing alone do not constitute a violation of any applicable law; and (viii) any claims arising under a restrictive covenant agreement (including but not limited to, non-solicitation, non-competition, confidentiality, etc.) between the Company and you as such restrictive covenant agreements will be adjudicated in a court of competent jurisdiction in accordance with its terms.

Further, this Agreement does not prohibit the filing of an administrative charge with a federal, state, or local administrative agency such as the EEOC, NLRB or the Department of Labor (DOL). Similarly, this Agreement shall not have any effect on any third parties non-signatories to this Agreement, including governmental agencies such as the EEOC, the DOL and the NLRB which by operation of law may file lawsuits in their own name notwithstanding this Agreement to arbitrate.

3. **Class/Collective Action Waiver**

   This Agreement requires all claims to be pursued on an individual basis only. You and the Company hereby waive all rights to (i) commence, or be a party to, any class, representative or collective claims or (ii) jointly bring any claim against each other with any other person or entity. You and the Company must pursue any claim on an individual basis only, including claims alleging a pattern and practice of unlawful conduct. In addition, the inability to join others in a claim for pattern and practice violations shall not by itself constitute a bar to the pursuit of such a claim.

   Lastly, nothing herein limits your right and the rights of others to collectively challenge the enforceability of this Agreement, including the class/collective action waiver. Notwithstanding, the Company will assert that the parties have agreed to pursue all claims individually in the arbitral forum and may ask a court to compel arbitration of each individual's claims. To the extent that the filing of such an action is concerted activity protected under the National Labor Relations Act, such filing will not result in threats, discipline or discharge.

4. **Severability and Related Issues**

   The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable. However, any determination as to the enforceability of the class/collective action waiver shall be made solely by a court. If a

court deems the class/collective action waiver unlawful, then such action shall proceed forward in court as a collective, representative or class action.

With the exception of the class/collective action waiver as stated above, the arbitrator shall modify or amend this Agreement to cure any provision which the arbitrator has deemed unenforceable. This Agreement shall be self-amending; meaning if by applicable law a provision is deemed unlawful or unenforceable that provision and the Agreement automatically, immediately and retroactively shall be amended, modified, and/or altered to be enforceable. If this Agreement is determined to be unenforceable and cannot be amended to be enforceable or if a claim is found not to be subject to this Agreement, such matters shall be subject to a non-jury trial in the federal or state court that has jurisdiction over the matter.

**5. Consideration**

In addition to the consideration being a mutual Agreement to arbitrate, the Company agrees to reimburse you for any administrative filing fees the arbitration firm may impose on you to initiate arbitration. As further consideration, the Company will pay 100% of the arbitration firm's fees as well as the arbitrator's fees and expenses. **To the extent permitted by applicable law, your continued employment and/or your accepting employment with the Company subsequent to this Agreement's implementation also shall constitute consideration and acceptance by you of the terms and conditions set forth in this Agreement.** The Parties agree that the consideration set forth in this paragraph is wholly adequate to support this Agreement.

**6. Arbitration Process**

**a.** Arbitration Firm

The Company has selected National Arbitration and Mediation, Inc. ("NAM") to arbitrate all disputes under this Agreement. However, the Company reserves the right to change the arbitration firm from time to time provided that it gives advance written notice to you of such change and that the arbitration firm selected by the Company is a nationally recognized and experienced neutral arbitration organization (NAM and any designated successor to NAM is hereinafter referred to as the "Arbitration Firm").

**b.** Payment of Arbitration Fees and Costs

The Company will pay 100% of the Arbitration Firm's fees as well as the arbitrator's fees and expenses. The Company also will pay (or reimburse you) for 100% of any filing fees that the Arbitration Firm may charge to initiate arbitration. Each party shall otherwise bear its own costs and fees associated with the arbitration including, but not limited to, attorneys' fees and the costs and fees of responding to discovery requests.

**c.** Filing to Commence Arbitration

The party seeking arbitration shall follow the then-current procedures required by the Arbitration Firm to file for arbitration. The filing and subsequent arbitration procedures shall be in accordance with the then-current version of the Arbitration Firm's rules for the resolution of employment disputes except as otherwise provided herein. Except as otherwise provided herein, the rules in effect at the time of

arbitration will govern, and you should review an updated copy of the rules. Updated copies of the rules are available for review at the restaurant office or you may contact NAM to request a copy at 990 Stewart Avenue, Garden City, NY 11530, telephone no. (800) 358-2550, fax no. (516) 794-8518 or you may obtain them from NAM's website (www.namadr.com). If an Arbitration Firm other than NAM is selected by the Company, the Company will provide you with information on how to obtain such firm's rules.

**d.** Selection of Arbitrator and Structure of the Arbitration

The arbitration will consist of two phases, and a single arbitrator shall preside over each phase. During the first and second phase, the Arbitration Firm shall provide each party with a list of three (3) arbitrators who are qualified in the field of employment law so that the Parties can select an arbitrator for both phases. The party that filed the arbitration shall eliminate one arbitrator from the list, and then the other party shall eliminate one arbitrator from the list of remaining two (2) arbitrators. The remaining arbitrator shall be the arbitrator selected for that phase.

There shall be one arbitrator for the matter up through submission and determination of any motion for summary judgment filed by either party (the "First phase"). If a summary judgment motion is made, the arbitrator must render a written and detailed opinion on that motion within sixty (60) calendar days of the submission of all supporting and opposition papers.

If summary judgment is in any part denied, the case shall proceed to final hearing before *another* arbitrator who did not hear or decide any summary judgment motion (the "Second phase"). That arbitrator shall be selected from a new panel provided by the Arbitration Firm. If no summary judgment is filed, then no new arbitrator will be selected to hear the matter, as the original arbitrator will retain jurisdiction.

**e.** Time and Place of Arbitration

The arbitration will be held at a mutually convenient time and place within 50 miles of the Company location at which you are or most recently were working. Notwithstanding, by mutual agreement of the Parties, an alternate location outside the aforementioned 50 mile restriction is permitted.

**f.** Rules of Arbitration

Except as provided herein, the arbitration shall be conducted in accordance with the Arbitration Firm's then-current rules for the resolution of employment disputes. **To the extent that any of the provisions herein conflict with any rules of the Arbitration Firm, the express provisions of this Agreement shall prevail.**

**g.** Authority of Arbitrator

The arbitrator shall be authorized to make awards including any remedy or relief provided by statute or common law under which the claim or dispute arises. However, the arbitrator shall have no authority to make awards beyond said remedy or relief. The arbitrator may award reasonable attorneys' fees and expenses only if expressly permitted by the applicable statute or law. In the absence of such an express requirement, the arbitrator shall not have the authority to award attorneys' fees and expenses to either party. The arbitrator shall not consider any claim that is barred by any applicable statute of limitations or otherwise raised in an untimely

4

fashion as provided by applicable law. In reaching a decision, the arbitrator shall be bound by the law and applicable legal precedent and shall have no power to vary from said law and precedent. The arbitrator shall have no authority to consolidate claims and/or to arbitrate a collective, representative or class claim/action. Similarly, the arbitrator shall have no authority to make any determination as to the enforceability of this Agreement's class/collective action waiver.

**h.** Discovery
The arbitrator shall apply the Federal Rules of Civil Procedure (except for Rules 23 and 26) and the Federal Rules of Evidence. The rules of discovery shall be modified to allow each party 10 interrogatories, including sub-parts, 10 requests for production, including sub-parts, and two (2) depositions. Electronic discovery is limited to searches of the Company's e-mail accounts of no more than five (5) addresses for a twelve-month period and a maximum of five (5) search terms or phrases are permissible. For good cause shown, the arbitrator may modify these limitations on discovery.

**i.** Representation
Either party may proceed in arbitration with or without an attorney; however, each party is responsible to bear the costs and fees for their respective attorney. If you initiate the arbitration, the decision whether to use a lawyer must be made at the time that arbitration is initiated.

**j.** Timeliness of Claims and Other Defenses
Any claim for arbitration which would be barred from court as untimely based on any applicable statute of limitations or other legal application, shall be equally barred from arbitration. All rights, remedies, exhaustion requirements, statutes of limitations and defenses applicable to claims asserted in a court of law will have equal application at arbitration.

**k.** Arbitration Awards / Decisions
Any decision or award rendered by the arbitrator (or the arbitrators handling an appeal) shall be written and set forth all facts and conclusions of law which the arbitrator relied upon in reaching his/her decision or award. Subject to a party's right to appeal as set forth herein, the decision or award of the arbitrator appointed during the First and Second phases of the arbitration as described herein, shall be final and binding on both you and the Company. A decision or award that is not appealed may be entered as a final order / judgment in any court of competent jurisdiction in accordance with the statutes and rules governing confirmation of arbitration awards / decisions. However, subsequent to the appeal process hereunder being exhausted, any decision by the arbitrator(s) may be subject to review pursuant to the grounds set forth in the Federal Arbitration Act.

**l.** Appeal
A party may file for an appeal of the final decision or award of an arbitrator to a panel of three arbitrators (the "Panel") within 30 calendar days after receipt of the arbitrator's decision. A party also may appeal any arbitrator's decision on summary judgment motions within 20 calendar days after the receipt of the arbitrator's decision. A record created by non-stenographic means (e.g., tape recording) can be

5

used, with the cost of any certified transcription of same used for appeal borne by the appealing party. The Panel shall be selected in accordance with the Arbitration Firm's then current rules for the resolution of employment disputes. The Panel shall review the decision or award as if it is a court of appellate jurisdiction reviewing a lower court's decision. No bond shall be required in the case of an appeal. The Panel shall set an appropriate schedule for the briefing of the appeal. An interlocutory appeal of an arbitrator's decision may be brought before a Panel where an arbitrator has breached the explicit rules of this Agreement or if a party seeks to recuse or remove an arbitrator for legally sufficient grounds. The decision of the Panel is final and binding. The decision of the Panel may be entered as a final order / judgment in any court of competent jurisdiction in accordance with the statutes and rules governing confirmation of arbitration awards / decisions.

7. **Other Issues**

   **a.** Jury Waiver
   You and the Company expressly waive your right to a trial by jury for all claims covered by this Agreement.

   **b.** Amendments
   The Company may amend or terminate this Agreement upon 30 days written notice; provided, however, that this Agreement will remain binding on all parties as to any claims arising prior to the issuance of the notice of the Agreement's change or termination.

   **c.** Choice of Law
   This Agreement shall be deemed to be made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of Florida, without giving effect to any choice or conflict of laws principles.

   **d.** Federal Arbitration Act
   This Agreement is governed by the Federal Arbitration Act ("FAA") and involves a transaction in interstate law. To the extent that the FAA is found inapplicable and/or to the extent any of the Parties is exempt from the FAA, the Florida Arbitration Code shall govern this Agreement.

   **e.** No Employment Agreement / Employment At Will
   The terms and conditions described in this Agreement are not intended to, and shall not, create a contract of employment for a specific duration of time. Employment with the Company is at-will and voluntarily entered into and both you and the Company are free to end that relationship at any time, for any reason and with or without prior notice.

   **f.** Condition of Employment
   It is a condition of your employment by the Company that you agree to be bound by the terms of this Agreement.

   **g.** Survival
   This Agreement, including all subparts, survives the termination of your employment with the Company.

**h.**  Excused Leave to Attend Arbitration

If you are employed by the Company at the time of the arbitration, then you shall be permitted excused, but unpaid, absence(s) to attend the arbitration.

**8.**  Receipt, Acceptance, and Acknowledgement

**YOU ACKNOWLEDGE THAT THIS AGREEMENT IS A LEGAL DOCUMENT WHICH, AMONG OTHER THINGS, REQUIRES YOU TO ARBITRATE, ALL CLAIMS YOU MAY HAVE NOW OR IN THE FUTURE WITH THE COMPANY, WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT.**

**YOU ACKNOWLEDGE AND ADMIT THAT THE EXCLUSIVE METHOD FOR ACCEPTING THIS AGREEMENT IS BY YOUR CONTINUED EMPLOYMENT *(OR YOUR ACCEPTING EMPLOYMENT AS THE CASE MAY BE)* AFTER YOUR RECEIPT OF SAME BY ANY NUMBER OF METHODS INCLUDING BUT NOT LIMITED TO (1) IN PERSON RECEIPT; (2) RECEIPT BY U.S. MAIL; (3) REQUESTING A COPY OF THE AGREEMENT FROM THE COMPANY; AND/OR (4) BY OTHER MEANS OF DISTRIBUTING THE AGREEMENT AS DETERMINED BY THE COMPANY.   THE FOLLOWING THREE EXAMPLES ARE ILLUSTRATIVE AND NOT EXHAUSTIVE:**

❖ **IF YOU RECEIVE THIS AGREEMENT DURING AN ARBITRATION ROLL-OUT MEETING HELD ON A FRIDAY MORNING AT 9:00a.m. AND YOUR SHIFT BEGINS AT 11:00a.m. THAT SAME FRIDAY, YOU ACCEPT THE AGREEMENT BY SIMPLY REPORTING FOR WORK AT YOUR 11:00a.m. SHIFT.**

❖ **IF YOU STARTED A 6:00a.m. TO 5:00p.m. SHIFT ON THE SAME FRIDAY AS THE EXAMPLE ABOVE AND ATTENDED THE ARBITRATION ROLL-OUT MEETING WHEREIN YOU RECEIVED A COPY OF THE ARBITRATION AGREEMENT, YOU ACCEPT THE AGREEMENT IF YOU DECIDE TO CONTINUE YOUR SHIFT AFTER THE MEETING ENDS AT 10:30a.m.**

❖ **IF YOU RECEIVE AN ARBITRATION AGREEMENT IN THE MAIL, YOU ACCEPT THE AGREEMENT BY REPORTING TO WORK FOR YOUR NEXT SCHEDULED SHIFT.**

***YOU ACKNOWLEDGE AND AGREE THAT YOU MAY RECEIVE MORE THAN ONE COPY OF THE AGREEMENT; HOWEVER, YOU CAN ONLY ACCEPT IT ONCE. THEREFORE, IF YOU HAVE ALREADY ACCEPTED THE AGREEMENT BY YOUR CONTINUED EMPLOYMENT AND THEN RECEIVE AN ADDITIONAL COPY OF IT BY MAIL (OR SOME OTHER METHOD), YOUR RECEIPT OF THE ADDITIONAL COPY WILL NOT AFFECT YOUR PRIOR ACCEPTANCE OF THE AGREEMENT.***

FURTHER, YOU ACKNOWLEDGE AND AFFIRM THAT YOU HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT.

YOU ACKNOWLEDGE AND ADMIT THAT THE COMPANY SCHEDULED MULTIPLE PROGRAMS *(INCLUDING MAKE-UP DATES FOR EMPLOYEES WHO COULD NOT ATTEND THE INITIAL PRESENTATIONS OF THE PROGRAMS)* DESIGNED TO INFORM YOU AND ALL EMPLOYEES OF THE COMPANY'S ARBITRATION PROGRAM. FURTHER, YOU ACKNOWLEDGE AND AFFIRM THAT IF YOU COULD NOT ATTEND ANY OF THE AFOREMENTIONED PROGRAMS, THE COMPANY WILL SCHEDULE A MAKE-UP PROGRAM FOR YOU UPON YOUR REQUEST.

YOU ACKNOWLEDGE AND ADMIT THAT THE PEOPLE WHO CONDUCTED THE PROGRAM ARE NOT EMPLOYEES OF THE COMPANY AND HAD NO ACTUAL OR APPARENT AUTHORITY TO AFFECT YOUR TERMS AND/OR CONDITIONS OF EMPLOYMENT INCLUDING A COMPLETE LACK OF AUTHORITY TO TERMINATE YOUR EMPLOYMENT OR IN ANY WAY DISCIPLINE YOU. MOREOVER, YOU ACKNOWLEDGE AND ADMIT THAT THE PEOPLE WHO CONDUCTED THE PROGRAM ADVISED YOU THAT THE COMPANY HAD A POLICY AGAINST RETALIATION AND THAT YOU WOULD NOT BE SUBJECT TO UNLAWFUL RETALIATION.

YOU ACKNOWLEDGE AND ADMIT THAT YOUR CONTINUED EMPLOYMENT BY THE COMPANY AFTER YOUR RECEIPT OF THIS AGREEMENT IS VOLUNTARY AND WILL CONSTITUTE YOUR ACCEPTANCE OF THIS AGREEMENT. FURTHER, YOU ACKNOWLEDGE AND ADMIT THAT YOUR DECISION TO CONTINUE YOUR EMPLOYMENT AFTER YOUR RECEIPT OF THIS AGREEMENT IS VOLUNTARY AND FREE FROM ANY COERCION, DURESS AND/OR FRAUD.

Exhibit "B"

## FREQUENTLY ASKED QUESTIONS ABOUT ARBITRATION

- **Why is the Company implementing an arbitration program now?**
  There are many reasons why the Company has decided to implement an arbitration program at this time. Many of these reasons were covered during the video which introduced the arbitration program and covered its key benefits. Also, our industry presents unique economic challenges, and that being the case, legal expenses have the real possibility of adversely impacting the Company's ability to operate which in turn affects every employee. Accordingly, arbitration is a method of better anticipating outside costs and expenses. In addition, arbitration is recognized as quicker and more effective method of fairly resolving disputes. As explained in the video, arbitration is a win-win for both the Company and its employees.

- **What does it mean that this is a "mandatory" arbitration agreement?**
  Like many other employment policies, agreeing to arbitrate disputes is a condition of continued employment. Much like the Company's attendance or punctuality policies are mandatory, so is agreeing to arbitrate. Accordingly, the Company requires that all employees, who continue their employment following their receipt of the Agreement, are subject to arbitration.

- **How is the arbitration agreement accepted or rejected by an employee?**
  Any employee who has received the arbitration agreement ("Arbitration Agreement" or "Agreement") and who remains employed after their receipt of the Agreement will have accepted the Agreement by their continued employment. Those employees who have received the Agreement and choose not to continue their employment with the Company after their receipt of the Agreement will, by their actions, have rejected the Agreement.

- **Can I take the Arbitration Agreement home and think about it or take it to a lawyer?**
  Yes. It is perfectly fine for you to take the Arbitration Agreement home or to a lawyer. **PLEASE NOTE:** *The employee must decide to either continue or not to continue their employment with the Company before his/her next scheduled shift.*

- **Copies of NAM's rules are available for review at the Company's Management/HR office or you may contact NAM to request a copy at 990 Stewart Avenue, Garden City, NY 11530, telephone no. (800) 358-2550, fax no. (516) 794-8518 or you may obtain them from NAM's website (www.namadr.com)**

If your questions are not resolved by this FAQ sheet, please e-mail the Company's independent HR consultant at info@hrmcs.com who will answer your questions via email.

***Please note that this FAQ sheet provides general information about the Arbitration Agreement.  To the extent anything herein conflicts with the terms of the Arbitration Agreement, the Arbitration Agreement controls.***

Exhibit "C"

## PACKET ACKNOWLEDGEMENT FORM

By marking the corresponding box next to each of the documents listed below, I acknowledge that my packet contains those documents and that I have received those documents for my review.

☐ **MEXICAN GASTRONOMY INTERNATIONAL, LLC'S ARBITRATION PROGRAM & AGREEMENT**

☐ **FREQUENTLY ASKED QUESTIONS ABOUT ARBITRATION SHEET**

By signing below, I acknowledge that I have received the above-listed documents and that the Company requires me to read and become familiar with the contents of the documents.

LUPERON GARCIA, RICARDO

412

FOOD RUNNER

10 - 2 - 15

DATE