**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 16-24598-CIV-MARTINEZ/GOODMAN**

RICARDO LUPERON-GARCIA,

Plaintiff,

v.

MEXICAN GASTRONOMY INTERNATIONAL, LLC, and ALBERTO CINTA,

Defendants.
_______________________________________/

**REPORT AND RECOMMENDATIONS CONCERNING DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Defendants Mexican Gastronomy International, LLC ("MGI" or "Cantina") and Alberto Cinta ("Cinta")[1] filed a motion to compel arbitration and dismiss proceedings [ECF No. 1-5] in this lawsuit filed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. In his opposition response [ECF No. 14], Plaintiff Ricardo Luperon-Garcia ("Plaintiff") argued that the arbitration provisions violate the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.*, and are therefore unenforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, because they do not permit collective arbitration or collective action in any other forum. Defendants filed a reply [ECF No. 24], and argued that applicable case law rejects Plaintiff's argument.

[1] MGI and Cinta are referred to collectively as "Defendants."

The argument that collective action waivers in arbitration agreements violate the NLRA is one which many plaintiffs have been advancing in the past few years, especially in FLSA cases. At bottom, the argument is based on the theory that the right to pursue a collective action is a substantive right, not a procedural one. There are some courts which have accepted this theory, which the National Labor Relations Board ("NLRB") previously adopted. However, those courts appear to be in the minority, and there are many more courts which have rejected this argument in the past few years.

In fact, the Undersigned recently entered a 37-page Report and Recommendations on these very issues in an FLSA lawsuit brought by an Uber driver against Uber. In this other case's Report and Recommendations, I recommended granting Uber's motion to compel arbitration and to strike the collective action allegations, and I also recommended that the case be stayed (as opposed to being dismissed) pending the resolution of the arbitration.

The legal arguments raised by Plaintiff in the instant case are substantially similar to the arguments raised by the plaintiff in *Lamour v. Uber Technologies, Inc.*, No. 16-cv-21449-JEM (S.D. Fla.) ("*Lamour*"). In my *Lamour* Report, I recommended that the District Court reject the NLRA arguments which the plaintiff asserted there (and which Plaintiff also asserts here). [16-cv-21449, ECF No. 110].

Rather than reiterate the 37 pages, I will simply adopt my Report from *Lamour* here and add some additional analysis for the one significant distinction between this

case and *Lamour*. This distinction is that the arbitration agreement in *Lamour* had an opt-out provision, whereas here, the Arbitration Agreement provided that agreeing to the arbitration provision was a condition of employment.

**Factual Background**

Cantina first hired Plaintiff in January 2015, and Plaintiff worked for the company until January 2016. On or about October 2, 2015, Cantina implemented its mandatory arbitration program and agreement concerning its employees. During the initial implementation meeting, Plaintiff (i) received a copy of MGI's Arbitration Program & Agreement ("Arbitration Agreement"); (ii) received a copy of a "Frequently Asked Questions About Arbitration" informational sheet; and (iii) was presented a video (in both English and Spanish) that discussed the Arbitration Agreement's terms.

After Plaintiff received the Arbitration Agreement's terms (including an explanation of the exclusive method for acceptance and/or rejection), Plaintiff accepted the Arbitration Agreement and agreed to abide by its terms by continuing to work at the company. Indeed, Plaintiff worked at Cantina for several months following implementation of the Arbitration Agreement.

**Cantina's Arbitration Program and Agreement**

Cantina attached the entire Arbitration Agreement as an exhibit to its motion to compel arbitration. [ECF No. 1-5, pp. 23-34]. The exhibit included the Arbitration Agreement's terms, a section entitled "frequently asked questions about arbitration"

("FAQ Sheet") and a form which Plaintiff signed, indicating receipt of the Arbitration Agreement and the FAQ Sheet. The signature also acknowledged Cantina's requirement that he read and become familiar with the documents.

The Arbitration Agreement contains a separate paragraph, entitled "Class/Collective Action Waiver," which explains that "[t]his Agreement requires all claims to be pursued on an individual basis only." [ECF No. 1-5, p. 24]. However, it also notes that "nothing herein limits your right and the rights of others to collectively challenge the enforceability of this Agreement, including the class/collective action waiver." [ECF No. 1-5, p. 24]. It also provides that "to the extent that the filing of such an action is concerted activity protected under the National Labor Relations Act, such filing will not result in threats, discipline or discharge." [ECF No. 1-5, p. 24].

The Agreement also provides that Cantina "will pay 100% of the Arbitration Firm's fees as well as the arbitrator's fees and expenses." [ECF No. 1-5, p. 25]. In addition, it similarly provides that Cantina will "pay (or reimburse you) for 100% of any filing fees that the Arbitration Firm may charge to initiate arbitration." [ECF No. 1-5, p. 25]. It also explains that each party "shall otherwise bear its own costs and fees associated with the arbitration including, but not limited to, attorneys' fees and the costs and fees of responding to discovery requests." [ECF No. 1-5, p. 25].

In addition, the Arbitration Agreement states that the arbitration "will be held at a mutually convenient time and place within 50 miles of the Company location at which

you are or most recently were working. Notwithstanding, by mutual agreement of the Parties, an alternate location outside the aforementioned 50 mile restriction is permitted." [ECF No. 1-5, p. 26].

In Section 8, entitled "Receipt, Acceptance and Acknowledgement," the Agreement states, in all capital letters, in bold font, the following:

> **8. Receipt, Acceptance, and Acknowledgement**
> YOU ACKNOWLEDGE THAT THIS AGREEMENT IS A LEGAL DOCUMENT WHICH, AMONG OTHER THINGS, REQUIRES YOU TO ARBITRATE ALL CLAIMS YOU MAY HAVE NOW OR IN THE FUTURE WITH THE COMPANY, WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT.
>
> YOU ACKNOWLEDGE AND ADMIT THAT THE EXCLUSIVE METHOD FOR ACCEPTING THIS AGREEMENT IS BY YOUR CONTINUED EMPLOYMENT *(OR YOUR ACCEPTING EMPLOYMENT AS THE CASE MAY BE)* AFTER YOUR RECEIPT OF SAME BY ANY NUMBER OF METHODS INCLUDING BUT NOT LIMITED TO (1) IN PERSON RECEIPT; (2) RECEIPT BY U.S. MAIL; (3) REQUESTING A COPY OF THE AGREEMENT FROM THE COMPANY; AND/OR (4) BY OTHER MEANS OF DISTRIBUTING THE AGREEMENT AS DETERMINED BY THE COMPANY. THE FOLLOWING THREE EXAMPLES ARE ILLUSTRATIVE AND NOT EXHAUSTIVE:
>
> - ❖ IF YOU RECEIVE THIS AGREEMENT DURING AN ARBITRATION ROLL-OUT MEETING HELD ON A FRIDAY MORNING AT 9:00 a.m. AND YOUR SHIFT BEGINS AT ll:OO a.m. THAT SAME FRIDAY, YOU ACCEPT THE AGREEMENT BY SIMPLY REPORTING FOR WORK AT YOUR ll:OO a.m. SHIFT.
>
> - ❖ IF YOU STARTED A 6:00 a.m. TO 5:00 p.m. SHIFT ON THE SAME FRIDAY AS THE EXAMPLE ABOVE AND ATTENDED THE ARBITRATION ROLL-OUT MEETING WHEREIN YOU RECEIVED A COPY OF THE ARBITRATION AGREEMENT, YOU ACCEPT THE AGREEMENT IF YOU DECIDE TO CONTINUE YOUR SHIFT AFTER THE MEETING ENDS AT 10:30 a.m.

- IF YOU RECEIVE AN ARBITRATION AGREEMENT IN THE MAIL, YOU ACCEPT THE AGREEMENT BY REPORTING TO WORK FOR YOUR NEXT SCHEDULED SHIFT.

***YOU ACKNOWLEDGE AND AGREE THAT YOU MAY RECEIVE MORE THAN ONE COPY OF THE AGREEMENT; HOWEVER, YOU CAN ONLY ACCEPT IT ONCE. THEREFORE, IF YOU HAVE ALREADY ACCEPTED THE AGREEMENT BY YOUR CONTINUED EMPLOYMENT AND THEN RECEIVE AN ADDITIONAL COPY OF IT BY MAIL (OR SOME OTHER METHOD), YOUR RECEIPT OF THE ADDITIONAL COPY WILL NOT AFFECT YOUR PRIOR ACCEPTANCE OF THE AGREEMENT.***

FURTHER, YOU ACKNOWLEDGE AND AFFIRM THAT YOU HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT.

YOU ACKNOWLEDGE AND ADMIT THAT THE COMPANY SCHEDULED MULTIPLE PROGRAMS *(INCLUDING MAKE-UP DATES FOR EMPLOYEES WHO COULD NOT ATTEND THE INITIAL PRESENTATIONS OF THE PROGRAMS)* DESIGNED TO INFORM YOU AND ALL EMPLOYEES OF THE COMPANY'S ARBITRATION PROGRAM. FURTHER, YOU ACKNOWLEDGE AND AFFIRM THAT IF YOU COULD NOT ATTEND ANY OF THE AFOREMENTIONED PROGRAMS, THE COMPANY WILL SCHEDULE A MAKE-UP PROGRAM FOR YOU UPON YOUR REQUEST.

YOU ACKNOWLEDGE AND ADMIT THAT THE PEOPLE WHO CONDUCTED THE PROGRAM ARE NOT EMPLOYEES OF THE COMPANY AND HAD NO ACTUAL OR APPARENT AUTHORITY TO AFFECT YOUR TERMS AND/OR CONDITIONS OF EMPLOYMENT INCLUDING A COMPLETE LACK OF AUTHORITY TO TERMINATE YOUR EMPLOYMENT OR IN ANY WAY DISCIPLINE YOU. MOREOVER, YOU ACKNOWLEDGE AND ADMIT THAT THE PEOPLE WHO CONDUCTED THE PROGRAM ADVISED YOU THAT THE COMPANY HAD A POLICY AGAINST RETALIATION AND THAT YOU WOULD NOT BE SUBJECT TO UNLAWFUL RETALIATION.

YOU ACKNOWLEDGE AND ADMIT THAT YOUR CONTINUED EMPLOYMENT BY THE COMPANY AFTER YOUR RECEIPT OF THIS

AGREEMENT IS VOLUNTARY AND WILL CONSTITUTE YOUR ACCEPTANCE OF THIS AGREEMENT. FURTHER, YOU ACKNOWLEDGE AND ADMIT THAT YOUR DECISION TO CONTINUE YOUR EMPLOYMENT AFTER YOUR RECEIPT OF THIS AGREEMENT IS VOLUNTARY AND FREE FROM ANY COERCION, DURESS AND/OR FRAUD.

[ECF No. 1-5, pp. 29-30].

The FAQ Sheet listed the following questions and answers:

• **Why is the Company implementing an arbitration program now?**
There are many reasons why the Company has decided to implement an arbitration program at this time. Many of these reasons were covered during the video which introduced the arbitration program and covered its key benefits. Also, our industry presents unique economic challenges, and that being the case, legal expenses have the real possibility of adversely impacting the Company's ability to operate which in turn affects every employee. Accordingly, arbitration is a method of better anticipating outside costs and expenses. In addition, arbitration is recognized as quicker and more effective method of fairly resolving disputes. As explained in the video, arbitration is a win-win for both the Company and its employees.

• **What does it mean that this is a "mandatory" arbitration agreement?**
Like many other employment policies, agreeing to arbitrate disputes is a condition of continued employment. Much like the Company's attendance or punctuality policies are mandatory, so is agreeing to arbitrate. Accordingly, the Company requires that all employees, who continue their employment following their receipt of the Agreement, are subject to arbitration.

• **How is the arbitration agreement accepted or rejected by an employee?**
Any employee who has received the arbitration agreement ("Arbitration Agreement" or "Agreement") and who remains employed after their receipt of the Agreement will have accepted the Agreement by their continued employment. Those employees who have received the Agreement and choose not to continue their employment with the

Company after their receipt of the Agreement will, by their actions, have rejected the Agreement.

**• Can I take the Arbitration Agreement home and think about it or take it to a lawyer?**
Yes. It is perfectly fine for you to take the Arbitration Agreement home or to a lawyer. **PLEASE NOTE:** ***The employee must decide to either continue or not to continue their employment with the Company before his/her next scheduled shift.***

**• Copies of [National Arbitration and Mediation, Inc. ("NAM")]'s rules are available for review at the Company's Management/HR office or you may contact NAM to request a copy at 990 Stewart Avenue, Garden City, NY 11530, telephone no. (800) 358-2550, fax no. (516) 794-8518 or you may obtain them from NAM's website (www.namadr.com)**

If your questions are not resolved by this FAQ sheet, please e-mail the Company's independent HR consultant at info@hnncs.com who will answer your questions via email.

***Please note that this FAQ sheet provides general information about the Arbitration Agreement. To the extent anything herein conflicts with the terms of the Arbitration Agreement, the Arbitration Agreement controls.***

[ECF No. 1-5, p. 32].

Defendants offered the Arbitration Agreement to Plaintiff on or about October 2, 2015, when the company implemented its Arbitration Agreement. First, an independent human resources consultant provided every then-current employee with the following explanatory materials:

a. the Arbitration Agreement;

b. the FAQ Sheet; and

c. the video (in both English and Spanish) explaining the terms of the Arbitration Agreement and the manner in which an employee may accept or reject the Arbitration Agreement ("Video").

Plaintiff received and signed his packet acknowledgement form, thereby confirming receipt of these materials.

Thereafter, the independent human resources consultant held an employee meeting where the material terms of the Arbitration Agreement were explained to Plaintiff and the other employees. At the conclusion of this meeting, all employees (including Plaintiff) were once again reminded that the only method of accepting (or rejecting) the Arbitration Agreement was by the employee's continued (or discontinued) employment with Cantina.

Employees were all encouraged to email Cantina's independent human resources consultant (at the email address provided in the FAQ Sheet) if they had any questions that had not otherwise been answered during the meeting and their review of the Arbitration Agreement, the FAQ Sheet, and the Video.

Plaintiff does not in any way challenge this factual background. Instead, his sole challenge is a legal one: he contends that the Arbitration Agreement violates the NLRA and is therefore unenforceable under the FAA. Therefore, Plaintiff contends that the Court should deny Cantina's motion to compel arbitration.

**Legal Analysis**

Because the Undersigned just last week engaged in a comprehensive analysis on the same argument presented by Plaintiff, and I found that the NLRA ***does not*** render collective action waivers in arbitration agreements concerning FLSA lawsuits as unlawful, I hereby adopt and incorporate my Report and Recommendations in the *Lamour* case to the instant case.

However, the *Lamour* case involved an opt-out provision while the instant case does not. Therefore, the Undersigned needs to address the legal consequences arising from the absence of an opt-out provision.

At its core, Plaintiff's argument is still the same one advanced by the plaintiff in *Lamour* -- that the right to collective action is a substantive right, not a procedural one. The difficulty with this argument, though, is that it is contrary to Eleventh Circuit law.

Plaintiff contends that the Seventh and Ninth Circuits' decisions in *Lewis v. Epic Systems Corp.*, 823 F.3d 1147, 1153 (7th Cir. 2016) and *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 980 (9th Cir. 2016) should be adopted by this Court because, according to Plaintiff, "[t]he Eleventh Circuit would likely follow the Seventh Circuit['s]" reasoning. [ECF No. 14, p. 8]. However, as noted in the Undersigned's Report and Recommendations in *Lamour*, the Eleventh Circuit has **already** considered this issue and upheld the validity of arbitration agreements with class and collective action waivers, making the law in this Circuit clear. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d

1326, 1327 (11th Cir. 2014) (holding that provision in arbitration agreement waiving ability to bring collective action was enforceable under the FAA).

The United States Supreme Court has also distinguished between a waivable procedural right (the right to use a court for class or collective claims rather than arbitration) and a non-waivable substantive right (to be free from discrimination). *Gilmer v. Interstate/Johnson Lane Corp.*, 111 S. Ct. 1647, 1651-52 (1991). In that case, the Supreme Court held that the right to pursue class proceedings in federal court was a **procedural right** that could be waived. *Id.* at 1652. The Supreme Court went on to uphold the validity of arbitration agreements that require individuals to waive such rights.

Similarly, the Supreme Court has also rejected objections regarding the infeasibility of the arbitral forum and held that **"[c]ourts must 'rigorously enforce' arbitration agreements according to their terms,**" so long as the waivers contained in the agreements are of procedural rights (the right to pursue a class action) and not substantive rights (the right to pursue the rights "afforded by the statute"). *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309, 2314 (2013) (internal citation omitted) (emphasis supplied). The Supreme Court in *Italian Colors* once again went on to uphold the validity of arbitration agreements that require individuals to waive such rights.

In a similar FLSA lawsuit involving a mandatory arbitration clause with no opt-out provision, a federal district court in this Circuit upheld the arbitration provision in

the face of a similar legal challenge. *See De Oliveira v. Citicorp N. Am., Inc.*, No. 8:12-cv-251-T-26TGW, 2012 WL 1831230, at *2 (M.D. Fla. May 18, 2012) (rejecting challenge and noting that the Eleventh Circuit's holding in *Caley*[2] is precedent which must be followed).

Plaintiff has provided no binding authority to persuade this Court that the law in the Eleventh Circuit or the Supreme Court has, or should be, changed. As such, Plaintiff's argument that the Arbitration Agreement is not a valid, legal, or enforceable agreement under Florida law, must fail. Accordingly, I recommend that the District Court compel Plaintiff to arbitrate his claims in accordance with the parties' Arbitration Agreement.

**Conclusion**

The Undersigned **respectfully recommends** that United States District Judge Jose E. Martinez **grant** Defendants' motion to compel arbitration and stay the case pending resolution by the arbitral panel.

**Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if

[2] *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1375-76, 1379 (11th Cir. 2005) (enforcing collective action waiver to compel arbitration of an individual's FLSA overtime claim and holding that employees accepted the offer of the arbitration policy by their continued employment). The arbitration policy in *Caley* did not contain an opt-out agreement like the agreement in *Lamour*. Rather, agreeing to the dispute resolution policy in *Caley* was a condition of continued employment, just as it is in the instant case.

any, with United States District Judge Jose E. Martinez. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March 7, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All counsel of record